UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

IN RE FACEBOOK, INC., IPO SECURITIES AND
DERIVATIVE LITIGATION,

OPINION & ORDER
MDL No. 12-2389

------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/6/12
```

A P P E A R A N C E S:


        Attorneys for the Institutional Investor Group

        BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
        1285 Avenue of the Americas
        New York, NY  10019
        By:  Max W. Berger, Esq.

        LABATON SUCHAROW LLP
        140 Broadway
        New York, NY 10005
        By:  Thomas A. Dubbs, Esq.


        Attorney for the Eiffel Tower Ventures, LLC, the GAF
        Unit Trust and White Dune LLC

        ROBBINS GELLER RUDMAN & DOWD LLP
        58 South Service Road
        Suite 200
        Melville, NY 11747
        By:  Samuel H. Rudman, Esq.


        Attorneys for Lawrence Corneck and Eugene Stricker
        HARWOOD FEFFER LLP
        488 Madison Avenue
        New York, NY 10022
        By:  Joel C. Feffer, Esq.
             James V. Bashian, Esq.

Attorneys for the NASDAQ Claimant Group
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, NY 10017
By:  Andrew J. Entwistle, Esq.


Attorneys for the NASDAQ Negligence Parties
FINKELSTEIN THOMPSON LLP
1050 30th Street NW
Washington, DC 20007
By:  Michael G. McLellan, Esq.

LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway
Suite 501
New York, NY 10006
By:  Christopher Lovell, Esq.


Attorneys for NASDAQ Defendants
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
By:   William A. Slaughter, Esq.
      Margaret Osborne Padilla, Esq.
      Paul Lantieri, III, Esq.
      Stephen J Kastenberg, Esq.


Attorneys for the Facebook Defendants
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
By:  Andrew B. Clubok, Esq.
     Brant Warren Bishop, Esq.
     Elizabeth L. Deeley, Esq.
     James Francis Basile, Esq.
     Susan Elisabeth Engel, Esq.

WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
By:  Richard D. Bernstein, Esq.
     Tariq Mundiya, Esq.
     Todd G. Cosenza, Esq.

Attorneys for the Underwriter Defendants
DAVIS POLK & WARDELL LLP
450 Lexington Avenue
New York, NY 10017
By:  James P. Rouhandeh, Esq.
     Charles S. Duggan, Esq.
     Neal Alan Potischman, Esq.
     Andrew Ditchfield, Esq.
     Samantha Harper Knox, Esq.

**Sweet, D.J.**

Pursuant to the transfer order from the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel"), entered on October 4, 2012, 41 actions stemming from the May 18, 2012 initial public offering ("IPO") of Facebook, Inc. ("Facebook" or the "Company") are presently before this Court. The cases include class actions against defendant Facebook and certain of its directors and officers (collectively, the "Facebook Defendants"),[1] alleging violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") (collectively, the "Securities Actions");[2] class actions against the NASDAQ OMX Group Inc. and

---

[1] The Facebook Defendants include Facebook, Inc.; Mark Zuckerberg; Sheryl K. Sandberg; David A. Ebersman; David M. Spillane; Marc L. Andreessen; Erskine B. Bowles; James B. Breyer; Donald E. Graham; Reed Hastings; and Peter A. Thiel.

[2] The Securities Actions include:  Brian Roffe Profit Sharing Plan v. Facebook, Inc., No. 12-cv-4081 (filed 5/23/12); Twining v. Facebook, Inc., No. 12-cv-4099 (filed 5/23/12); Goldrich Cousins P.C. 401(k) Profit Sharing Plan & Trust v. Facebook, Inc., No. 12-cv-04131 (filed 5/23/12); Braun v. Facebook, Inc., No. 12-cv-4150 (filed 5/24/12); Alexander v. Facebook, Inc., No. 12-cv-4157 (filed 5/24/12); Lightman v. Facebook, Inc., No. 12-cv-4184 (filed 5/25/12); Reichenbaum v. Facebook, Inc., No. 12-cv-4194 (filed 5/25/12); Lazard v. Facebook, Inc., No. 12-cv-4252 (filed 5/30/12); Gregorczyk v. Facebook, Inc., No. 12-cv-4291 (filed 5/31/12); Brinckerhoff v. Facebook, Inc., No. 12-cv-4312 (filed 6/1/12); Goldberg v. Facebook, Inc., No. 12-cv-4332 (filed 6/1/12); Eannarino v. Facebook, Inc., No. 12-cv-4360 (filed 6/4/12); Mamula v. Facebook, Inc., No. 12-cv-4362 (filed 6/4/12); Leitner v. Facebook, Inc., No. 12-cv-4551 (filed 6/11/12); Savitt v. Facebook, Inc., No. 12-cv-4648 (filed 6/13/12); Sexton v. Facebook, No. 12-cv-4777 (filed 6/19/12); and Loomis v. Facebook, Inc., No. 12-cv-5511 (filed 7/17/12), which were filed in this District.  The Securities Actions also include:  Spatz v. Facebook, Inc., No. 12-cv-2662; Chang v. Facebook, Inc., No. 12-cv-2680; Gregory v. Facebook, Inc., No. 12-cv-2815; Lapin v. Facebook, Inc., No. 12-cv-3195; DeMois. Jr. v. Facebook, Inc., No. 12-cv-3196; Lazar v. Facebook, Inc., No. 12-cv-3199; Shierry v. Facebook, Inc., No. 12-cv-3200; Cuker v. Facebook, Inc., No. 12-cv-3201; Lieber v. Facebook, Inc., No. 12-cv-

The NASDAQ Stock Market LLC (collectively "NASDAQ") alleging federal securities (the "NASDAQ Securities Actions" and negligence claims (the "NASDAQ Negligence Actions") (collectively, the "NASDAQ Actions");[3] and derivative actions (the "Derivative Actions").[4]

Several motions have been made for (1) consolidation of these cases, pursuant to Rule 42 of the Federal Rules of Civil Procedure; (2) for appointment as lead plaintiff in the consolidated actions; and (3) for the approval of lead counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

For the reasons set forth below, the Securities

---

3202; Stokes v. Facebook, Inc., No. 12-cv-3203; Ahrendtsen v. Facebook, Inc., No. 12-cv-3212; and Ilicks v. Facebook, Inc., No. 12-cv-3353, which were filed in the Northern District of California and transferred to this District. In addition, actions by plaintiffs Lawrence Corneck and Eugene Stricker under the Exchange Act include: Corneck v. Morgan Stanley & Co LLC, J.P. Morgan Securities LLC, and Goldman Sachs & Co., No. 12-cv-4215 (filed 5/25/12); Eugene Stricker v. Morgan Stanley & Co LLC, J.P. Morgan Securities LLC, and Goldman Sachs & Co., No. 12-cv-4763 (filed 6/18/12).

[3] The NASDAQ Actions include: First New York Securities, LLC, et al., v. NASDAQ OMX Group, Inc. et al., No. 12-cv-5630 (filed 7/23/12); Goldberg v. NASDAQ OMX Group, Inc., et al., No. 12-cv-4054 (filed 5/22/12); Yan v. NASDAQ OMX Group, Inc., et al., No. 12-cv-4200 (filed 5/25/12); Alfonso v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4201 (filed 5/25/12); Levy v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4315 (filed 6/1/12); Amin v. The NASDAQ Stock Market LLC, et al., No. 12-cv-4403 (filed 6/5/12); Steinman v. NASDAQ OMX Group, et al., No. 12-cv-4600 (filed 6/12/12); Roderick v. NASDAQ OMX Group, et al., No. 12-cv-4716 (filed 6/15/12); McGinty v. NASDAQ OMX Group, Inc., et al., No. 12-cv-5549 (filed 6/19/12); and Eagan v. NASDAQ OMX Group, Inc., et al., No. 12-cv-6882 (filed 9/11/12).

[4] The Derivative Actions include: Childs v. Zuckerberg, et al., No. 12-cv-4156 (filed 5/24/12); Cole v. Zuckerberg, et al., No. 12-cv-7549 (removed 6/28/12); Hubuschman v. Zuckerberg, et al., No. 12-cv-7553 (removed 6/28/12); and Levy v. Zuckerberg, et al., No. 12-cv-7815 (removed 7/12/12).

Actions are consolidated, the Institutional Investor Group is appointed lead plaintiff in the Securities Actions, and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Labaton Sucharow LLP ("Labaton Sucharow") are appointed co-lead counsel.  The NASDAQ Actions are also consolidated, First New York Securities LLC, T3 Trading Group, LLC and Avatar Securities, LLC (collectively, the "NASDAQ Claimant Group") are appointed lead plaintiffs in the NASDAQ Actions and the NASDAQ Negligence Parties are appointed co-lead plaintiffs in the NASDAQ Actions.[5]  Entwistle & Cappucci LLP ("Entwistle & Cappucci") is appointed lead counsel for the NASDAQ Securities Actions and Finkelstein Thompson LLP ("Finkelstein Thompson") and Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart") are appointed co-lead counsel for the NASDAQ Negligence Actions. All other motions pending before the Court related to these actions only are denied.[6]

This structure is subject to alteration at any time for good reason shown, or if the structure established proves detrimental, in any way, to the best interests of the proposed

---

[5] The NASDAQ Negligence Actions include all cases identified in fn.3, supra, except for First New York Securities, and the NASDAQ Negligence Parties consist of all plaintiffs in those actions.

[6] Motions to remand and all motions concerning the Derivative Actions will be heard on December 12, 2012 and will be addressed by the Court thereafter.

classes.

## I. Prior Proceedings

The complaints in the related actions involve the events surrounding and arising out of Facebook's May 18, 2012 IPO.  In addition to the 41 actions transferred as a result of the MDL Panel's transfer order, additional actions have been added to the litigation,[7] while other actions have been voluntarily dismissed without prejudice against all defendants pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. See In re Facebook. IPO Secs. & Derivative Litig., 12 MDL No. 2389, --- F. Supp. 2d ---, 2012 WL 4748325, at Ex. A (J.P.M.L. Oct. 4, 2012).  While many of the complaints allege different causes of action against different defendants, all of the claims relate to the same underlying set of events stemming from Facebook's IPO as set forth in the complaints and described below.

Facebook is a worldwide social networking company that:  (i) builds tools that enable users to connect, share, discover, and communicate with each other; (ii) enables

---

[7] As noted in the MDL Panel's Order, any additional actions "and any other related actions are potential tag-along actions." See In re Facebook. IPO Secs. & Derivative Litig., 2012 WL 4748325, at *1 n.1.

developers to build social applications of Facebook or to integrate their websites with Facebook; and (iii) offers products that enable advertisers and marketers to engage with its users.  As of February 2, 2012, Facebook had 845 million monthly users and 443 million daily users.

On February 1, 2012, in preparation for its IPO, Facebook filed a Form S-1 Registration Statement with the U.S. Securities Exchange Commission (the "SEC").  The Company subsequently amended the registration statement several times, before filing their final Form S-1/A on May 16, 2012 (the "Registration Statement").  On May 18, 2012, Facebook also filed a Form 424(b)(4) Prospectus (the "Prospectus") with respect to the IPO.

On May 18, 2012, the Company offered 421 million shares of Facebook common stock to the public at $38.00 per share on the NASDAQ stock exchange, thereby valuing the total size of the IPO at more than $16 billion.  The IPO was initially set to open at 11:00 a.m. Eastern Standard Time under the NASDAQ ticker symbol "FB," but was delayed.

On May 19, 2012, the day after the IPO, Reuters reported that Facebook "altered its guidance for research

earnings last week, during the road show, a rare and disruptive move."[8]  Then, on May 22, 2012, prior to the start of trading, Reuters revealed that Morgan Stanley, JP Morgan, and Goldman Sachs had cut their earnings forecasts for the Company prior to the IPO, but that only few preferred investor clients were apprised of the reduction.[9]  That day, Facebook stock closed at $31.00 per share, which was 18.42% below the IPO price.

Shortly thereafter, numerous plaintiffs filed lawsuits throughout the country raising claims about the adequacy of pre-IPO disclosures under the federal securities laws, federal and state claims against NASDAQ, and claims against the directors of Facebook for breaches of various duties to shareholders.  All of the plaintiffs allege that they suffered some loss as a result of these events, although, the causes of action they assert vary.

On September 20, 2012, the MDL Panel held a hearing to determine whether the pending 41 filed actions should be transferred to the Southern District of New York.  On October 4,

---

[8] Nadia Damouni, Morgan Stanley Was A Control-Freak On Facebook IPO -- And It May Have Royally Screwed Itself, BUSINESS INSIDER, May 19, 2012, http://www.businessinsider.com/morgan-stanley-facebook-ipo-2012-5.

[9] Alistair Barr, Insight:  Morgan Stanley Cut Facebook Estimates Just Before IPO, REUTERS, http://www.reuters.com/article/2012/05/22/us-facebook-forecasts-idUSBRE84L06920120522.

2012, the MDL Panel issued a transfer order, finding that the "Southern District of New York is an appropriate transferee district for pretrial proceedings in this litigation," reasoning that "[m]uch of the relevant discovery will be located in New York, including most discovery relating to alleged NASDAQ trading errors and discovery from the underwriter defendants, many of whom are located in New York." In re Facebook. IPO Secs. & Derivative Litig., 2012 WL 4748325, at *3.   The cases were assigned to this Court for coordination or consolidation of the pretrial proceedings.   Id.

On October 10, 2012, this Court issued a Practice & Procedure Order Upon Transfer Pursuant to 28 U.S.C. § 1407 (the "October 10 Order"), governing the practices and procedures for the 41 related actions filed against the Facebook Defendants, NASDAQ, and certain underwriter defendants (collectively, the "Underwriter Defendants"), including the three lead underwriters of the IPO,  Morgan Stanley & Co. LLC ("Morgan Stanley"), J.P. Morgan Securities, LLC ("JP Morgan"), and Goldman, Sachs & Co. ("Goldman Sachs") (collectively, the "Lead Underwriters").[10]

---

[10] The Underwriter Defendants include Morgan Stanley & Co. LLC; J.P. Morgan Securities LLC; Goldman, Sachs & Co.; Merrill Lynch; Pierce, Fenner & Smith Inc.; Barclays Capital Inc.; Allen & Company LLC; Citigroup Global Markets Inc.; Credit Suisse Securities (USA); Deutsche Bank Securities Inc.; RBC Capital Markets, LLC; Wells Fargo Securities, LLC; Blaylock Robert Van LLC; BMO Capital Markets Corp.; C.L. King & Associates, Inc.; Cabrera Capital Markets, LLC; CastleOak Securities, L.P.; Cowen and Company, LLC.; E*TRADE Securities LLC; Itau BBA USA Securities, Inc.; Lazard Capital Markets LLC;

The October 10 Order outlined the "Organization,
Designation and Responsibilities of Counsel" and set forth the
procedures to "designate lead counsel by October 31, 2012,
subject to the approval of the Court." (October 10 Order §
VII(B)). The October 10 Order also outlined certain procedures
"[i]n the event that counsel for each group of parties whose
interests are similarly aligned cannot successfully designate
lead counsel." (Id. § VII(B)(ii)).

Several parties, representing various interests of
class members, filed competing motions for appointment of lead
plaintiff and designation of lead counsel. According to the
parties, extensive discussions took place with the various lead
plaintiff movants and substantial progress toward agreement upon
designation was made. Pre-trial conferences were held on
November 7 and 14, 2012 and all unresolved motions were marked
as fully submitted.

## A) **The Securities Actions**

---

Lebenthal & Co., LLC; Loop Capital Markets LLC; M.R. Beal & Company;
Macquarie Capital (USA) Inc.; Muriel Siebert & Co., Inc.; Oppenheimer & Co.
Inc.; Pacific Crest Securities LLC; Piper Jaffray & Co.; Raymond James &
Associates, Inc.; Samuel A. Ramirez & Co., Inc.; Stifel, Nicolaus & Co.,
Inc.; The Williams Capital Group, L.P.; and William Blair & Company, LLC.

Several of the above-referenced actions allege violations of Sections 11, 12(a)(2), and 15 of the Securities Act and Section 20A of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The Securities Actions allege that Facebook's Registration Statement and Prospectus (collectively, the "Offering Documents") issued in connection with the IPO were false and misleading in violation of the Securities Act.

The first complaint alleging violations of the Securities Act against certain Facebook Defendants in connection with the IPO was filed in California State Court on May 22, 2012.[11]  On May 23, 2012, the first complaint subject to the PSLRA was filed in this District,[12] and the plaintiff in that case caused notice of the pendency of the Securities Actions to be published pursuant to the PSLRA on BusinessWire, a widely-circulated, national, business-orientated news reporting wire service.  The notice triggered the lead plaintiff motion deadline of July 23, 2012.

The filed complaints have alleged that the Offering Documents contained untrue statements of material facts and

_____

[11] See Lazar v. Facebook, Inc., No. Civ. 514065 (Cal. Super. Ct. San Mateo County May 22, 2012), removed to No. 12-cv-3199 (N.D. Cal. June 20, 2012).

[12] See Brian Roffe Profit Sharing Plan, No. 12-cv-4081.

omitted facts in order to make other statements contained therein not misleading, and that the Company misrepresented its financial condition by concealing the fact that it was experiencing a material decline in revenue growth due to an ongoing shift in the methods by which Facebook users access the Company's site.  The filed complaints also allege that Facebook Defendants failed to reveal these changed forecasts to the investing public, instead selectively disclosing this information only to favored investors.

The following movants and their proposed counsel are bringing claims pursuant to the Securities Act and the Exchange Act are:

- The North Carolina Department of State Treasurer on behalf of the North Carolina Retirement Systems ("North Carolina DST"), Banyan Capital Master Fund Ltd. ("Banyan"), Arkansas Teacher Retirement System ("Arkansas Teacher") and the Fresno County Employees' Retirement Association ("Fresno") (collectively, the "Institutional Investor Group"), represented by Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Labaton Sucharow LLP ("Labaton Sucharow");

13

- Eiffel Tower Ventures, LLC, the GAF Unit Trust and White
  Dune LLC (collectively, the "Eiffel Tower Funds"),
  represented by Robbins Geller Rudman & Dowd LLP ("Robbins
  Geller");

- Lawrence Corneck and Eugene Stricker (collectively, the
  "Exchange Act Plaintiffs"), represented by Harwood Feffer
  LLP ("Harwood Feffer") and the Law Offices of James V.
  Basian, P.C. ("Basian").

In competing motions, the Institutional Investor Group
and the Eiffel Tower Funds seek (1) consolidation of all related
actions, (2) their appointment as lead plaintiff pursuant to the
PSLRA and (3) the approval of their respective selection as lead
counsel for the class.

The Exchange Act Plaintiffs assert that they have set
forth a separate and distinct claim that the Lead Underwriters
shorted over 63 million shares of the Company's stock for their
own profit in violation of the Exchange Act. They contend that,
because of the significantly different pleading and substantive
factual issues, the Exchange Act Plaintiffs are entitled to the
(1) consolidation of the two Exchange Act actions with each
other, (2) appointment of the Exchange Act Plaintiffs as lead

14

plaintiff pursuant to the PSLRA, (3) coordination of the
Exchange Act Actions with all other actions concerning the IPO
and (4) approval of Harwood Feffer and Basian as co-lead counsel
for the putative class.

### B) The NASDAQ Actions

Several of the above-referenced actions also assert
claims against NASDAQ.  The NASDAQ Actions were filed on behalf
of retail investors who contend that their orders to purchase or
sell Facebook stock were not properly executed or confirmed as a
result of systems issued experienced by NASDAQ on the day of the
Facebook IPO.

The following movants and their proposed counsel are
bringing federal securities and negligence claims against
NASDAQ:

- First New York Securities LLC, T3 Trading Group, LLC and
  Avatar Securities, LLC (collectively, the "NASDAQ Claimant
  Group"), represented by Entwistle & Cappucci LLP
  ("Entwistle & Cappucci");

- The NASDAQ Negligence Parties, represented by Finkelstein

Thompson LLP ("Finkelstein Thompson") and Lovell Steward Halebian Jacobson LLP ("Lovell Steward").

On August 3, 2012, the NASDAQ Claimant Group filed a motion seeking the (1) consolidation of all NASDAQ actions, (2) their appointment as lead plaintiff pursuant to the PSLRA and (3) the approval of Entwistle & Cappucci as lead counsel for the class.

The NASDAQ Securities Actions have alleged federal securities claims against NASDAQ on behalf of a class of purchasers and sellers of Facebook common stock made on NASDAQ on the day of the Facebook IPO, that NASDAQ made material misrepresentations and omissions concerning the capability of its technology and trading platform, which caused substantial damages to the NASDAQ Claimant Group, who collectively traded over 3 million shares at a total value in excess of $316 million on the day of Facebook's IPO.

On November 5, 2012, the NASDAQ Negligence Parties filed a brief seeking the designation of Finkelstein Thompson and Lovell Stewart as interim co-lead class counsel for the NASDAQ Negligence Action.

16

The NASDAQ Negligence Actions allege state law negligence claims for damages on behalf of retail investors who placed trade orders during the Company's IPO. Specifically, the complaints in the NASDAQ Negligence Parties allege that NASDAQ, in breach of duties owed to investors, negligently failed to promptly and accurately process investors' trades related to Facebook stock, resulting in monetary damages.

## C) **The Derivative Actions**

Several of the above-referenced actions also assert claims against individual defendants, who are directors of Facebook. The Derivative Actions contend that the individual Facebook Defendants breached various duties to shareholders by "caus[ing] Facebook to conduct the IPO in a fashion that violated the federal securities laws."). (Levy Compl. ¶ 84; see also Childs Compl. ¶ 64; Cole Compl. ¶ 96).

Like the Securities Actions, the Derivative Actions take issue with Facebook's alleged disclosure of certain forward-looking projections to analysis employed by the underwriters. (Levy Compl. ¶ 49; Childs Compl. ¶ 48; Cole Compl. ¶ 33-40). Other allegations relate to Facebook's May 9, 2012 amendment to the S-1 Registration Statement, which

17

disclosed that in the beginning of the second quarter of 2012, growth in the number of Facebook's daily active users continued to outpace growth in the number of ads delivered.  (Levy Compl. ¶ 47; Childs Compl. ¶ 45; Cole Compl. ¶ 28).

## II.  Discussion

### A) Consolidation is Appropriate

Motions to consolidate are governed by Rule 42(a) of the Fed. R. Civ. P., and provides:  "If actions before the court involve a common question of law or fact, the court may:  (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a).  "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."  Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).  Consolidation is appropriate in order to serve the interests of "judicial economy" and "to avoid unnecessary costs or delay."  Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990).

18

Here, separate consolidation of the Securities Actions and the NASDAQ Actions is appropriate.[13]  While some movant plaintiffs have advocated for addition subsets of the above actions, as discussed below, each set of cases "present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."  Kaplan, 240 F.R.D. at 91. Accordingly, the Securities Actions and the NASDAQ Actions will be separately consolidated.

### B) The Securities Actions: Consolidation and Appointment

### i) The Applicable Standard

The PSLRA provides a sequential procedure for selecting a lead plaintiff in each private security action "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 77 z-1(a)(1); see also 15 U.S.C. § 77 z-1(a)(3)(B).  If, however, "there is more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate

---

[13] Presently, the Derivative Actions will not be consolidated.  Consideration of any consolidation will be deferred until after the December 12, 2012 hearing.

plaintiff "until after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).

Upon consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions . . . ."  Id.  Pursuant to the PSLRA, a court is to consider all motions made by class members within the sixty-day period prescribed by statute.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The pendency of the action must be publicized in a widely circulated national business-orientated publication or wire service not later than 20 days after filing of the first complaint.  Then, the PSLRA establishes a statutory presumption that a party is the most adequate plaintiff on a showing that it:

  (aa) has either filed the complaint or made a motion in response to a notice . . .;

  (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

20

15 U.S.C. § 77z-1(a)(3)(B)(iii).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only "upon proof by a member of the purported plaintiff class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### ii)  **Consolidation**

Consolidation is appropriate where actions before the Court involve common questions of law or fact.  See Fed. R. Civ. P. 42(a).  With multiple actions alleging securities fraud, as here, consolidation is appropriate where the actions involve "the same 'public statements and reports'" and where consolidation would not prejudice the defendants.  See Constance Szesny Trust v. KPMG LLP, et al., 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (quoting Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 129 (S.D.N.Y. 1997)).

Currently, there are three movants seeking Lead

Plaintiff status:  (1) the Institutional Investor Group; (2) the
Eiffel Tower Funds; and (3) the Exchange Act Plaintiffs.  The
Exchange Act Plaintiffs oppose consolidation with the Securities
Actions, on the grounds that they believe that their claims
under Section 20A of the Exchange Act should be prosecuted
separately from the other claims asserted in the Securities
Actions.  See Memo. in Support of Motion for Coordination,
Consolidation, App't of Lead Plaintiff, and Approval of
Selection of Co-Lead Counsel, Corneck v. Morgan Stanley & Co.
LLC, No. 12-cv-4215, (S.D.N.Y. filed July 23, 2012).


        More specifically, the Exchange Act Plaintiffs contend
that they present the only actions in the litigation brought
under the Exchange Act, "and therefore will require proof under
a different statute with different elements, with different
factual issues to be determined, thereby rendering them distinct
from all the other actions."  Id. at 4.  According to the
Exchange Act Plaintiffs, to prevail, first, they would have to
prove scienter, which is not a relevant issue in the Securities
Actions, and second, unlike the Securities Actions, the Exchange
Act Plaintiffs do not allege either a material misstatement or
material omission in the Offering Documents.  Id. at 4-5.  Thus,
the factual and legal determinations necessary for these claims
"will require extensive analysis that will ultimately be of

value only to one or the other of the sets of actions." Id. at

5.  The Exchange Act Plaintiffs therefore advocate for

coordination with the Securities Act claims for pre-trial

discovery, but oppose consolidation with the Security Act

claims.  Id.

Consolidation, however, is appropriate even in cases

where there are "[d]ifferences in causes of action, defendants,

or the class period," as long as there are common questions of

fact and law.  Kaplan, 240 F.R.D. at 91.  Although the Exchange

Act Plaintiffs portray their claims as so unique to warrant a

separate action with their own representation, the similarities

between their claims and the Securities Act claims warrant

consolidation.  Both claims involve putative class actions that

seek relief on behalf of similar classes, asserted against some

of the same defendants, arising out of the same series of

events, and assert claims under federal securities laws.  To

reject consolidation, would unnecessarily create two distinct

and parallel securities litigation cases with different

plaintiffs and different leadership.  In addition, the

determination of which claims to assert in the consolidated

complaint will be determined by the Court-appointed lead

plaintiff, who is charged with acting in the best interest of

all class members.  See In re Gen. Elec. Sec. Litig., No. 09-

1951(DC), 2009 WL 2259502, at *3 (S.D.N.Y. July 29, 2009) (noting that the lead plaintiff could resolve any difference in an action through the filing of a consolidated complaint  and preserve "the tone and direction of the lawsuit.").

Moreover, courts in this district have routinely consolidated actions Securities Act and Exchange Act claims. See e.g., Id. at *2-3 (consolidating cases that alleged Securities Act and Exchange Act claims, finding, among other things, that "there is substantial overlap in the complaints," and that "consolidating the actions is the most efficient course" to avoid "duplicative efforts, wasting both the Court's time and parties' time and money."); Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (stating that claims violating the Securities Act and Exchange Act are "well-suited for consolidation."). Thus, consolidating the actions is the most efficient course to avoid a fractious litigation of duplicative efforts and unnecessary costs and delays.

Accordingly, the Exchange Act Plaintiffs' motion is rejected and the Securities Actions are consolidated to include both the Securities Act and Exchange Act claims.

### iii) <u>Lead Plaintiff</u>

The Institutional Investor Group is the presumptive lead plaintiff of the Securities Actions.  The Institutional Investor Group timely moved for the appointment as lead plaintiff on July 23, 2012, has the largest financial interest in the relief sought by the class of any movant and, despite the Eiffel Tower Funds' argument to the contrary, satisfies the requirements of Rule 23.  As discussed below, given that the Eiffel Tower Funds have failed to rebut the presumption in favor of the Institutional Investor Group, the Institutional Investor Group is appointed lead plaintiff of the Securities Actions.

Courts have developed a four-factor test to determine which party has the largest financial interest in the litigation.  The Court is to consider:

> (1) The number of shares purchased during the class period; (2) the number of net shares purchased during the class period (i.e. the number of shares retained during the period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period.

<u>Strougo v. Brantley Capital Corp.</u>, 243 F.R.D. 100, 104 (S.D.N.Y. 2007).

Using these objective factors, the Institutional Investor Group has the largest financial interest of the movants. Between the IPO and May 22, 2012, North Carolina DST purchased 685,737 shares of Facebook common stock spending $26,058,006 and sold 67,600 shares for $2,783,373.46, retaining 618,137 shares at a cost of $19,162,247. (See Silk Decl. Ex. B). They claim losses of approximately $4.1 million under the first-in, first-out ("FIFO") and the last-in, first-out ("LIFO") calculation method. (Id.). Banyan purchased 1,415,862 shares of Facebook common stock spending $47,811,924.81 and sold all of the shares at a cost of $46,106,778.26. (Id.). They claim losses of approximately $1.7 million under the FIFO and LIFO analysis. Arkansas Teacher purchased 246,849 shares of Facebook common stock spending $9,380,262 and sold 104,320 shares for $4,179,664.26, retaining 142,529 shares at a cost of $4,418,399. (Id.). They claim losses of approximately $782,198.74 under the FIFO and LIFO analysis. Fresno purchased 95,900 shares of Facebook common stock spending $3,644,200 and sold 56,300 shares for $1,841,177.56, retaining 39,600 shares at a cost of $1,227,600. (Id.). They claim losses of approximately $575,422.44 under the FIFO and LIFO analysis. Therefore, collectively the Institutional Investor Group claims losses of approximately $7,175,153 from their purchase of Facebook stock.

In this district, "courts have consistently held that
. . . . the magnitude of the loss suffered is the most
significant."). See e.g., Bo Young Cha v. Kinross Gold Corp.,
No. 12-1203(PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31,
2012). The Eiffel Tower Funds reported losses in excess of $1.5
million and is the only party to challenge the Institutional
Investor Group's claim that it has the greatest financial
interest in this litigation. The Institutional Investor Group's
claimed loss is therefore over four times greater than that of
the Eiffel Tower Funds, the movant with the next largest loss.
Accordingly, the Institutional Investor Group satisfies the
PSLRA's prerequisite of having the largest financial interest.

As the Eiffel Tower Funds point out to advance their
argument, "a movant's financial interest is just a beginning
point." In re Cable & Wireless, PLC, Sec. Litig., 217 F.R.D.
372, 377 (E.D. Va. 2003). To qualify as the presumptive lead
plaintiff, in addition to possessing a significant financial
interest, a lead plaintiff must also "satisf[y] the requirements
of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C.
§ 77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that one or
more members of a class may sue on behalf of the class if:

(1) the class is so numerous that joinder of all

27

members is impracticable, (2) there are questions of
law or fact common to the class, (3) the claims or
defenses of the representative parties are typical of
the claims or defenses of the class, and (4) the
representative parties will fairly and adequately
protect the interests of the class.

At this stage of the litigation, "the moving plaintiff
must only make a preliminary showing that the adequacy and
typicality requirement have been met." Freudenberg v. E*Trade
Financial Corp., No. 07-8538(RWS), 2008 WL 2876363, at *5
(S.D.N.Y. July 16, 2008). In fact, "[a] wide ranging analysis
under Rule 23 is not appropriate [at this initial stage of the
litigation] and should be left for consideration of a motion for
class certification." In re Party City Sec. Litig., 189 F.R.D.
91, 106 (D.N.J. 1999) (citation omitted).

Typicality is established where each class member's
claim "arises from the same course of events, and each class
member makes similar legal arguments to prove the defendant's
liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d
285, 291 (2d Cir. 1992); see also Blackmoss, 252 F.R.D. at 191.
However, the claims of the class representative need not be
identical to those of all members of the class. Indeed, "[t]he
possibility of factual distinctions between the claims of the
named plaintiffs and those of other class members does not
destroy typicality, as similarity of legal theory may control

even in the face of differences of fact." In re Prudential

Sec., Inc., Ltd. P'ships Litig., 163 F.R.D. 200, 2008 (S.D.N.Y.

1995 (citation omitted); see Bishop v. N.Y.C. Dep't of Hous.

Pres. & Dev., 141 F.R.D. 229, 238 (2d Cir. 1992) ("[T]he

typicality requirement may be satisfied even if there are

factual dissimilarities or variations between the claims of the

named plaintiffs and those of other class members, including

distinctions in the qualifications of the class members.").


       The adequacy requirement of Rule 23(a) is satisfied

when "proposed class counsel is qualified, experienced, and

generally able to conduct the litigation; [ ] the proposed lead

plaintiff has interests that are [not] antagonistic to other

class members; and [ ] the proposed lead plaintiff and the other

class possess sufficient interest to pursue vigorous prosecution

of their claims." Canson v. WebMD Health Corp., No. 11-

5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011); see

also In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.,

No-08-MDL-1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)

(internal quotation and citations omitted) ("To determine

whether a lead plaintiff can fairly and adequately represent the

interests of the class . . . , the Court looks to factors such

as (1) the size, available resources and experience of the

proposed lead plaintiff; (2) the qualifications of the proposed

class counsel; and (3) any potential conflicts or antagonisms arising among purported class members.").

The Institutional Investor Group has satisfied the requirements of typicality as their claims arise from the same set of events and allege violations of the same federal securities laws as the other Securities Actions.  Like the other members of the class, the Institutional Investor Group purchased Facebook stock on or traceable to the Company's IPO, was harmed in a similar manner by many of the same defendants, and suffered damages as a result.  These shared claims, which are based on the same legal theories, arise from the same events and course of conduct as the claims of the other class members and therefore satisfy Rule 23(a)(3)'s typicality requirement.

In addition, the Institutional Investor Group will fairly and adequately represent the interests of the proposed class.  Its members are large, institutional investors with experience representing shareholder classes in similar litigation with the resources to pursue the action.  The Institutional Investor Group's selected counsel also has extensive experience in prosecuting securities class actions. Accordingly, the Institutional Investor Group satisfies the adequacy requirement.

In the final step of the lead plaintiff appointment
analysis, any competing movants and any other members of the
purported class are given the opportunity to rebut the
presumption that the movant is the most adequate lead plaintiff.
In order to successfully rebut this presumption, a member of the
purported plaintiff class must present proof that the
presumptively most adequate plaintiff either "will not fairly
and adequately protect the interests of the class," or else "is
subject to the unique defenses that render such plaintiff
incapable of adequately representing the class."  15 U.S.C. §
78u-4(a)(3)(B)(iii)(II).

The Eiffel Tower Funds have challenged the
Institutional Investor Group's presumptive lead plaintiff
status, contending that the Eiffel Tower Funds possess the
largest financial interest of any movant that is also adequate
and typical, a showing that they argue the Institutional
Investor Group fails to make.  As discussed below, they have
presented several arguments but must bear the burden of proving
that the Institutional Investor Group is unable to meet Rule
23's prerequisites with specificity.  See Constance Sczesny
Trust v. KPMG LLP, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004)
("conclusory assertions of inadequacy are . . . insufficient to

31

rebut the statutory presumption under the PSLRA without specific
support in evidence of the existence of an actual or potential
conflict of interest.").

The Eiffel Tower Funds have challenged typicality on
the ground that Banyan made its class period purchases of
Facebook stock on May 21 and 22, 2012, after Reuters had already
publicly reported on Facebook's revision to its Offering
Materials.  Thus, the Eiffel Tower Funds contend that Banyan's
purchases "undermines any causal nexus between the Defendants'
alleged misrepresentation and the resulting injury," and that
Banyan cannot be an adequate or typical investor since its only
Facebook stock purchases were made after the public disclosures.
Memo. in Further Support of the Motion for Consolidation, App't
of Lead Plaintiff, and Approval of Selection of Counsel and In
Opp. to the Competing Motions, Brian Roffe Profit Sharing Plan,
No. 12-cv-4081 (S.D.N.Y. filed Aug. 8, 2012) (citing In re
Cardinal Health, Inc. Sec. Litig., 226 F.R.D. 298 (N.D. Ohio
2005)).

However, Banyan purchased 620,388 of Facebook shares,
or 43.8% of its total purchases, on May 21, 2012, before any
complaint was filed and before the May 22, 2012 Reuters'
disclosure that the Lead Underwriters had cut their forecasts of

32

Facebook's earnings in the middle of the IPO roadshow.   In
addition, at this stage in the litigation, there is no reason to
reach any conclusions about the impact of the May 22, 2012
Reuters' report or rule on which disclosure revealed the alleged
misrepresentations.   See Dietrich v. Bauer, 192 F.R.D. 119, 125
(S.D.N.Y. 2000) (finding typicality met where the lead
plaintiff's "claims of fraud arise out of the same . . . schemes
as the rest of the putative class, and are premised upon the
same legal basis.").

Moreover, "[c]ourts have consistently rejected the
argument that post-disclosure purchases preclude a proposed
class representative from meeting Rule 23 (a) requirements. . .
." In re K-V Pharms. Co. Sec. Litig., No. 11-1816, 2012 WL
1570118, at *6 (Ed. Mo. May 3, 2012); see also In re Pfizer
Inc. Sec. Litig., No. 04-9866(LTS)(HBP), 2012 WL 1059671, at *7
(S.D.N.Y. Mar. 29, 2012).   Even assuming that Banyan purchased
the shares following the May 22, 2012 report, Banyan's claims
will survive, and there is no suggestion that the Institutional
Investor Group would not vigorously represent all plaintiffs.
See In re Comverse Tech., Inc. Sec. Litig., No. 06-
1825(NGG)(RER), 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008)
(explaining that "the fact that Menorah Group purchased shares
of Comverse stock only after Comverse's March 14, 2006 press

33

release does not suggest that it will not vigorously represent
the interests of plaintiffs who purchased Comverse shares only
before that press release: Menorah Group will recover nothing
unless it proves that members of the class who purchased
Comverse shares before the March 14, 2006 press release, like P
& P, were harmed by Comverse's earlier false disclosures.").

Aside from the time of its purchases, the Eiffel Tower
Funds also argue that Banyan, unlike traditional investors and
other class members, admittedly traded "on the basis of its
assessment of dislocations (i.e., when securities are not
correctly priced and cause a sudden repricing) and correlations
(i.e., when markets or securities move up or down concurrently
with other markets or securities in a way not attributable
solely to chance) between markets" and "changes its positions
frequently in response to shifting conditions in order to
control the risk in its portfolio." (Rosenfeld Decl. Ex. E).
According to the Eiffel Tower Funds, Banyan's trading strategy
therefore "engages in transactions far beyond the scope of what
the typical investor contemplates." In re MicroStrategy Inc.
Secs. Litig., 110 F. Supp. 2d 427, 437 (E.D. Va. 2000).
However, the trading strategy cited by the Eiffel Tower Funds is
attributable to Banyan Capital Partners, LLC ("BCP"), which is
not the movant in this case and has no demonstrated relationship

to Banyan's investment in Facebook.

In sum, the Eiffel Tower Funds' contentions fail to meet the exacting proof standard required under the PSLRA to demonstrate that Institutional Investor Group's claims are atypical.

Next, the Eiffel Tower Funds contend that disabling conflicts of interest pervade the Institutional Investor Group, that extensive entanglements exist between and among North Carolina DST, the largest members of the Institutional Investor Group, and its sole trustee, North Carolina Treasurer Janet Cowell ("Treasurer Cowell") and that the Institutional Investor Group "has issues and interest atypical of and antagonistic to those of the rest of the class." In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 455-56 (S.D. Tex. 2002).  The Eiffel Tower Funds assert that Treasurer Cowell maintained significant personal and financial ties with defendant Eskine B. Bowles ("Bowles"), a board member of defendants Facebook and lead underwriter Morgan Stanley.  The Eiffel Tower Funds also maintain that Treasurer Cowell has Carousel Capital ("Carousel"), Bowles' investment firm, managing millions of dollars of North Carolina DST's money together with another underwriter defendant, Credit Suisse. (See Rosenfeld Decl. Exs. A and B).  According to the Eiffel

35

Tower Group, this relationship has provided North Carolina DST with investment returns of 35% annually and an average of 19% over three years, resulting in a profit of $13 million. In addition, Bowles' wife, Crandall Bowles, is on the board of J.P. Morgan Chase & Co., the parent company of underwriter defendant JP Morgan, has a close personal relationship with Treasurer Cowell and was a lead contributor to and host of a fundraiser in the Bowles' home for Treasurer Cowell's reelection campaign. (See id. Ex. C).

The Eiffel Tower Funds advance that these relationships present conflicts and challenges to the Institutional Investor Group's typicality and adequacy, asserting that "[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (internal citations omitted). Thus, the Eiffel Tower Funds argue that the Institutional Investor Group cannot be appointed lead plaintiff, as courts "routinely f[i]nd a disqualifying unique defense where the potential named plaintiff has had a direct or personal relationship with a board member or

officer of the issuing company." See In re Indep. Energy
Holdings PLC, Sec. Litig., 210 F.R.D. 476, 481 (S.D.N.Y. 2002).

The Institutional Investors Group, however, maintains
that the purported relationships advanced by the Eiffel Tower
Funds do not give rise to any conflict of interest, nor
constitute the exacting proof needed to rebut the PSLRA's
presumption. See Foley v. Transocean Ltd., 272 F.R.D. 126, 133
(S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not
merely speculated, in order to rebut the presumption of the most
adequate lead plaintiff.").

Courts have found that a presumptive lead plaintiff's
declared intent to vigorously prosecute an action is sufficient
to dispense with "baseless conjecture" about conflicts based on
business relationships. See Teran v. Subaye, Inc., No. 11-
2614(NRB), 2011 WL 4357362, at *8 (S.D.N.Y. Sept. 16, 2011); see
also Foley, 272 F.R.D. at 133 (finding opposition to lead
plaintiff appointment "belied by [presumptive lead plaintiff's]
role in this lawsuit, its motion to be named lead plaintiff, and
its sworn certification that it will adequately and aggressively
lead the class.").

Here, as reflected in Treasurer Cowell's Declaration,

Treasurer Cowan knew that Bowles sat on the boards of Facebook and Morgan Stanley and still authorized North Carolina DST to proceed as part of the Institutional Investor Group.  (See Treasurer Cowell's Decl. ¶ 6).  The Declaration also "make[s] clear that North Carolina DST is intent on zealously prosecuting this action against all viable defendants . . . and will take all action necessary within the bounds of the law to maximize the Class' recovery . . . ."  (Id. ¶ 5).  In addition, "the mere fact that the North Carolina DST seeks appointment as lead plaintiff in the Action – which names Bowles as well as the underwriters of the IPO as defendants – demonstrates that there is no conflict of interest springing from any relationship with Bowles or any of the underwriter defendants."  Reply Memo. in Further Support of the Motion for Consolidation, App't of Lead Plaintiff, and Approval of Selection of Counsel, Brian Roffe Profit Sharing Plan, No. 12-cv-4081 (S.D.N.Y. filed Aug. 20, 2012).  At this stage in the litigation, the alleged conflict is belied by Treasurer Cowan's role in the motion and her Declaration.  See In re Elec. Data Sys. Corp. Sec. Litig., 226 F.R.D. 559, 570 (E.D. Tex. 2005) (holding that a business relationship with the potential defendants is no threat to adequacy when the plaintiff exhibits willingness to pursue all viable defendants.).

Similarly, the relationship between North Caroline DST and Carousel does not give rise to a disqualifying conflict. Carousel is one of more than 200 investment advisors that managed the North Carolina DST.  (See Treasurer Cowell's Decl. ¶ 7).  Treasurer Cowell has affirmed that Carousel did not purchase Facebook shares for the North Carolina DST nor did Carousel have any role in the decision to purchase the shares. (See id.).  The investment management services provided by Carousel, for a portion of North Carolina DST's $75 billion in pension fund investments, without more, do not present a disqualifying conflict.

Relationships, between movants and individual defendants, even when close, do not necessarily raise a conflict of interest sufficient to rebut the lead plaintiff presumption. See A1 Credit Co. v. RAIT Fin. Trust, No. 07-3148(LDD), slip op. at 7 (E.D. Pa. Oct. 25, 2007) (finding that the "close affiliation" of the movant and defendant, and interests of the movant in an entity with ties to those defendants were not substantial enough to support disqualification); see also In re Indep. Energy Holdings PLC, Sec. Litig., 210 F.R.D. at 483-84 (finding no conflict to warrant excluding the presumptive plaintiffs based on their familiarity and friendship with named board member, shareholder and individual defendant, without a

"magnitude of information" exchanged specifically concerning the company, including an invitation to participate in the IPO and a detailed overview of the company's operations and growth potential.).  Even assuming Treasurer Cowell had or has a close relationship with Bowles and his wife, there has been no showing that these relationships have affected the representation of the Institutional Investor Group's ability to adequately lead the class.  The actions of the Institutional Investor Group and the inclusion of members other than North Carolina DST also counter the Eiffel Tower Funds' efforts to rebut the presumption of appointment by the Institutional Investor Group.

To date, the Institutional Investor Group's presumptive lead plaintiff status has not been rebutted, and Institutional Investor Group is appointed lead plaintiff of the Securities Actions.

### iv)  **Applicant Counsel**

The Institutional Investor Group has selected the law firms of Bernstein Litowitz and Labaton Sucharow as co-lead counsel.  These firms have substantial experience in the prosecution of securities class actions and the representation of defrauded investors.  Labaton Sucharow has served as lead

40

counsel in numerous securities actions include In re American
Int. Group, Inc. Secs. Litig., No. 04-cv-8141 (S.D.N.Y.), in
which it recently achieved settlements totaling approximately $1
billion.  The firm has also recently negotiated settlements in
In re Bears Stearns, No. 08-MDL-1963 and In re Countrywide
Financial Corp., Secs. Litig., No. 07-cv-5295 (C.D. Cal.).
Bernstein Litowitz is similarly a nationally recognized firm
specializing in prosecuting securities class actions.  The firm
served as co-lead counsel in In re WorldCom, Inc. Secs. Litig.,
No. 02-cv-3288 (S.D.N.Y.) and class counsel in In re Nortel
Networks Corp. Secs. Litig., No. 05-MDL-1659 (S.D.N.Y.)


These firms have also served cooperatively as co-lead
counsel in major securities actions.  Both firms are well-
qualified and experienced to serve as lead counsel to the class
and are therefore appointed co-lead counsel in the Securities
Action.


## C) NASDAQ Actions: Consolidation and Appointment


There are presently ten class actions pending against
NASDAQ relating to the Facebook IPO.  Of those actions presently
included in this MDL proceeding, nine assert a negligence claim
and one asserts a Rule 10b-5 claims arising out of the system

issues experienced by NASDAQ on the day of the Facebook IPO.[14]

Although the NASDAQ Negligence Parties, citing the differences between the two types of claims - such as the elements of the claims, pleading standards, burdens of proof, procedural requirements under the PSLRA, and factual discovery - argue against the full consolidation of the NASDAQ Actions, as set forth below, consolidation of the NASDAQ Securities Actions and the NASDAQ Negligence Actions is appropriate.

### i)   **Consolidation**

Consolidation under Rule 42 should be granted only to the extent that there is not confusion, delay or prejudice.  See Celotex, 899 F.2d at 1284 (stating that "the court must consider:  whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense

---

[14] Three additional actions against NASDAQ assert a negligence claims, but are not included among the NASDAQ Negligence Actions as two were filed as individual actions, Simon v. The NASDAQ Stock Market LLC, No. 12-cv-7531 (filed May 21, 2012) and Tran v. The NASDAQ Stock Market LLC, No. 12-7811 (filed pro se June 22, 2012), and one is seeking remand to state court, Zack v. NASDAQ OMX Group, et. al, No. 12-cv-6439.

to all concerned of the single-trial, multiple-trial
alternatives.").  The NASDAQ Negligence Parties contend that
consolidation of all of the NASDAQ Actions will be overly broad
and cause confusion, delay and prejudice because of the
substantial differences, both factually and legally between the
two complaints.

The NASDAQ Negligence Parties cite to Liberty Media
Corp. v. Vivendi Universal, S.A., in which an earlier
consolidation was vacated because the Court found that the
impact of a defense based on the Securities Litigation Uniform
Reform Act of 1998, codified as 15 U.S.C. § 78bb, ("SLUSA") was
never considered.  842 F. Supp. 2d 587, 593 (S.D.N.Y. 2012).  In
that case, the Court determined that, because the cases were no
longer consolidated, the individual action "was no longer
arguably part of a 'covered class action' under SLUSA, and the
Defendants' preemption argument necessarily failed."  Id. at
590.  The Court concluded that prejudice would result because
"[c]ontinued consolidation could result in the loss of the
Plaintiffs' state-law claims in their entirety" and because the
parties would be forced to "litigate the state-law claims in
state court, while continuing to press the federal claims in
federal court."  Id.  In this case, the application of SLUSA
would not be dependent upon whether or not the securities claims

43

are consolidated.  See e.g., Barron v. Igolnikov, No. 09-4471(TPG), 2010 WL 882890, at *4-5 (S.D.N.Y. Mar. 10, 2010) (dismissing state common law claims, including gross negligence, pursuant to SLUSA and nothing that "SLUSA's preemptive reach extends to complaints framed in terms of causes of action other than fraud.") (citations omitted).

Moreover, courts have consolidated actions asserting different causes of action where the claims arose out of the same facts or class.  See e.g., Discount Bank and Trust Co. v. Salmon, Inc., 141 F.R.D. 42, 44 (S.D.N.Y. 1992) (consolidating an individual action alleging a RICO claim with related securities class actions that did not contain RICO claims); Primavera Familienstiftung, 173 F.R.D. at 130 (consolidating an action that asserted state common law claims with an action that asserted federal securities claims).  Here, all claims asserted against the NASDAQ defendants - regardless of the theory of liability - arise out of the same set of operative facts, involve the same group of defendants, are all made on behalf of the same class of investors (i.e., purchasers and sellers of Facebook common stock made on NASDAQ), and seek recovery of the same monetary losses allegedly suffered by the class members. [15]

---

[15] For example, the complaint in the NASDAQ Securities Action defines the class as:

The complaints involve similar factual allegations and will involve similar, if not identical, issues related to discovery and other pretrial and trial matters.

Despite the NASDAQ Negligence Parties' prediction that the differences in the interests of the two classes and the potential for conflicts between them will "inevitably lead to conflicts between the respective lead counsel over the content and wording of a single, combined complaint that would make the process essentially unworkable," (Lovell Stewart Letter, dated November 13, 2012), there is no specific support in evidence of any conflict beyond mere speculation.  Consolidation of all of the NASDAQ Actions is appropriate and the negligence claims are not incompatible with the securities claims, given the commonality of facts and circumstances underlying these claims.

---

[A]ll individuals, persons and entities that placed buy, sell or cancellation orders with respect to Facebook common stock on the NASDAQ stock exchange on May 18, 2012 whose orders were not promptly, timely, correctly and efficiently processed, and were delayed, or otherwise were adversely affected by the events described herein, and who suffered monetary losses thereby.

(First New York Securities, Compl. ¶ 98)

The complaint for the NASDAQ Negligence Action defines the class as:

All individuals or entities who made retail purchases of Facebook stock on May 18 and May 21, 2012, whose retail orders to buy, sell or cancel were not promptly, timely, correctly and efficiently processed; who did not receive execution at accurate and fair prices; whose trades and cancellations were not promptly and accurately confirmed; or who otherwise suffered losses on their purchases of Facebook shares as a proximate result of the events described herein.

(Goldberg, Compl. ¶ 154).

Moreover, regardless of the nature of the claims, all potential causes of action will have to be evaluated for its merits in framing a consolidated amended complaint for all the NASDAQ Actions. As the NASDAQ Defendants also point out, all of the actions will be subject to common defenses, including the threshold defense that self-regulatory organizations like NASDAQ are immune from suit for claims such as those asserted in these complaints arising out of their regulatory activities. Indeed, allowing the NASDAQ Securities Actions and the NASDAQ Negligence Actions to proceed separately will result in a duplication of effort by and costs to the parties and expose NASDAQ to multiple damage claims for the same alleged loss. Among other efficiencies, consolidation of these actions will greatly streamline motion practice and discovery, facilitate settlement discussions when appropriate and prevent inconsistent rulings on the same issues. Accordingly, all of the NASDAQ Actions are henceforth consolidated.[16]

### ii)  **Lead Plaintiff**

---

[16] The NASDAQ Actions consolidation with the Securities Actions against Facebook, its officers and directors, and the underwriters of the Facebook IPO is not appropriate at this time. As pointed out by the parties, these actions are filed on behalf of a different class of plaintiffs, against different defendants, and assert claims of different types of damages on different theories of liability than the NASDAQ Actions. Discovery schedules will be coordinated to prevent overlapping discovery.

For the reasons set forth below, the NASDAQ Claimant Group is the "most adequate plaintiff" and presumptive lead plaintiff in the NASDAQ Actions.  The NASDAQ Claimant Group timely moved for appointment as lead plaintiff on August 3, 2012, has the largest financial interest in the relief sought by the class of any movant and satisfies the requirements of Rule 23.

The NASDAQ Claimant Group has the largest financial interest attributable to NASDAQ's alleged wrongdoing.  According to the provided financial information, which includes certifications and related trading data, the NASDAQ Claimant Group traded over three million shares of Facebook common stock with an aggregate value of more than $316 million on the day of the IPO.  No other movant, including the NASDAQ Negligence Parties, have a larger financial interest in the outcome of this litigation.  Consequently, the NASDAQ Claimant Group is presumed to have the largest financial interest and is therefore the presumptive lead plaintiff.

Here, the NASDAQ Claimant Group's easily satisfies Rule 23's adequacy and typicality requirements.  First, the NASDAQ Claimant Group's claims are typical of other class

47

members as its members purchased Facebook common stock on the
day of the IPO and suffered damages as a result of NASDAQ's
alleged wrongdoing.  Second, the NASDAQ Claimant Group will
fairly and adequately represent the interests of the proposed
class.  Its members' interests are directly aligned, and not
antagonistic to the class.  The NASDAQ Claimant Group's members
have extensive experience in capital markets with a vested
interest in and every incentive to maximize the class' recovery.
They have also retained counsel with extensive experience,
knowledge and ability to conduct complex securities class action
litigation.  Accordingly, the NASDAQ Claimant Group satisfies
the typicality and adequacy requirements of Rule 23.

Although the NASDAQ Negligence Parties has failed to
establish any respect in which the NASDAQ Claimant Group's
interests are not aligned with the other putative class members,
on the possibility that conflict do ultimately arise, the
interests of the class can be protected by the appointment of
co-lead plaintiff.

The NASDAQ Negligence Parties has timely moved for
appointment and satisfies the typicality requirements of Rule
23.  Their claims arise out of the same course of events and are
based on the same legal theory of the other members of the class

asserting a claim of negligence. <u>See</u> <u>Robidoux v. Celani</u>, 987 F.2d 931, 936-37 (2d Cir. 1993); <u>In re Drexel Burnham Lambert Group, Inc.</u> 960 F.2d 285, 291 (2d Cir. 1991).

It is appropriate under the circumstances described above to have a co-lead plaintiff designated in this district whose losses focus on the alleged negligent failure of NASDAQ to maintain a properly functioning trading platform for the Facebook IPO.

### iii) <u>Applicant Counsel</u>

"In complex cases, courts may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation." <u>In re Bank of Am. Corp. Secs., Derivative and ERISA Litig.</u>, 258 F.R.D. 260, 272 (S.D.N.Y. 2009). Under Rule 23(g)(3), courts "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Interim class counsel's role is to "fairly and adequately represent the interests of the class." <u>Id.</u> 23(g)(4). The appointment of interim class counsel may be helpful in "clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to

motions, conducting any necessary discovery, moving for class
certification, and negotiating settlement."   Federal Judicial
Center, Manual For Complex Litigation § 21.11 (4th ed. 2004).


       "If more than one applicant seeks appointment as class
counsel, the court must appoint the applicant best able to
represent the interests of the class."   In making that
determination, the Court must consider:

> (i) the work counsel has done in identifying or
> investigating potential claims in the action; (ii)
> counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted
> in the action; (iii) counsel's knowledge of the
> applicable law; and (iv) the resources that counsel
> will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(a).   The Court can also consider "any
other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class."   Id.
23(g)(1)(B).


       The NASDAQ Claimant Group has selected Entwistle &
Cappucci as their choice of lead counsel.   The firm has
substantial resources and experience in prosecuting securities
class actions.   In the last few years, Entwistle & Cappucci have
obtained billions of dollars in recoveries on behalf of

50

defrauded public and private investors.  See e.g., In re Royal
Ahold, N.V. Sec. & ERISA Litig., No. 03-MDL-01539 (D. Md. June
26, 2006); In re DaimlerChrysler AG Sec. Litig., No. 00-cv-993
(D. Del. Feb. 5, 2004); In re BankAmerica Sec. Litig., No. 99-
MDL-1264 (E.D. Mo Oct. 18, 2002).  In addition, the firm has
already devoted substantial time and resources working with the
NASDAQ Claimant Group in identifying and investigating the
claims set forth in the complaint.

     The NASDAQ Negligence Parties have selected
Finkelstein Thompson and Lovell Stewart as their choice of co-
lead counsel.  The firms have experience in leadership positions
in complex class actions in antitrust, securities commodities
and other complex economic cases and resources to advance the
litigation.  See e.g., In re Natural Gas Commodity Litig., No.
03-cv-6186 (S.D.N.Y.); In re Interbank Funding Corp. Sec.
Litig., No. 02-1490 (D.D.C.); In re NASDAQ Market-Makers
Antitrust Litig., 187 F.R.D. 465, 471 (S.D.N.Y. 1998).  In
addition, the firms have already performed work in identifying,
investigating, developing and preserving the NASDAQ negligence
claims.

     Accordingly, Entwistle & Cappucci will serve as
counsel for the NASDAQ Securities Actions as lead counsel, and

Finkelstein Thompson and Lovell Stewart are appointed co-lead counsel for the NASDAQ Negligence Actions on an interim basis.

## III. **Conclusion**

Based upon the conclusions set forth above, the Securities Actions and the NASDAQ Actions are each separately consolidated.  The Institutional Investor Group is appointed lead plaintiff of the Securities Actions and its choice of co-lead counsel is approved.  The NASDAQ Claimant Group is appointed the lead plaintiff of the NASDAQ Actions and its choice of lead counsel is approved.  The NASDAQ Negligence Parties will act as co-lead plaintiff of the NASDAQ Actions and its choice of co-lead counsel is approved on a interim basis. The motions of the Eiffel Tower Group and Exchange Act Plaintiffs are denied.

The parties will meet and confer with respect to a schedule for filing of consolidated complaints and attendant motions and any other preliminary issues, which will be addressed in a pre-trial conference at 2PM on January 23, 2013 or such other date and time agreed upon by counsel and the Court.

52

It is so ordered.

**New York, NY**
**December 6 , 2012**

ROBERT W. SWEET
U.S.D.J.